EDGAR T. NUMRICH
P.O. BOX 1381
LAKE OSWEGO, OR 97035-0539
503-635-2599

FILED 20 DEC '19 10:57 USDC-ORP

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| **EDGAR T. NUMRICH,** | Civil No. 3:19-CV-2071-JR |
| Plaintiff, | **COMPLAINT** |
| v. | **Breach of Contract** (Implied Covenant of Good Faith and Fair Dealing) |
| **SYNCHRONY BANK,** a South Dakota corporation and a wholly-owned subsidiary of **SYNCHRONY FINANCIAL,** A Delaware corporation | **Negligence** **Negligent Misrepresentation** **Fraud** [Title 18 U. S. C. Sect. 1341, 1343, 1346, 1349] **Civil RICO – Mail & Wire Fraud** [Title 18 U. S. C. Sect. 1961-1965 1951 (a), (b)(2)] **Injunctive Relief** [Title 18 U. S. C. Sect. 1345(b)] |
| Defendant. | **CLAIM NOT SUBJECT TO MANDATORY ARBITRATION** **JURY TRIAL DEMANDED** |

Page 1 - COMPLAINT

## Nature of the Case

1.

This is a civil action for monetary damages and restitution from Synchrony Bank ("Synchrony Bank"; "Defendant").  Defendant is incorporated in the State of South Dakota with home offices in Draper, Utah, and is a wholly-owned subsidiary of Synchrony Financial, itself a Delaware corporation whose executive offices are located in Stamford, Connecticut.  Defendant's damages to Plaintiff arise from Defendant's unfair, unconscionable, individually-and-collectively willful conduct, representations, and procedures (collectively, "actions") in failing to perform its contract obligations to Plaintiff of financial services that have been otherwise-laced with unilateral, unannounced, and prejudicial actions. Such conduct by Defendant is likely not confined to this Plaintiff.

### Plaintiff

2.

Edgar T. Numrich is a citizen of the State of Oregon whose nominal addresses of record are in Clackamas County, Oregon.

### Defendant

3.

the lawful powers and responsibilities assigned and accountable thereto, and whose Banking business with individual consumers is conducted via the online world-wide Internet including consumer and business credit card accounts and servicing thereof.

4.

Defendant's damages to Plaintiff arise from Defendant's unfair, unconscionable, individually-and-collectively willful and malicious conduct arising from representations and

Page 2 - COMPLAINT

procedures (collectively, "actions") in failing to perform its contract obligations to Plaintiff and others on similar occasions having to do with Defendant's proprietary or co-branded credit card accounts as otherwise stated above herein.

5.

Defendant's contract obligations include, but are not limited to, protection of Plaintiff's credit card accounts, credit accommodation, credit worthiness, inaccurate history of Defendant's credit inquiries, and willful damage to integrity of Plaintiff's credit reports.

## Jurisdiction and Venue

6.

This Court has original jurisdiction over the matter under 28 U. S. C. Section 1332 in that this is a civil action for damages in which the matter in controversy exceeds the sum of the value of $75,000.00 exclusive of interest and costs, and is between citizens and corporations of or incorporated in different States. 18 U. S. C. 1964(a) also applies.

7.

This Court has personal jurisdiction over the matter where at all relevant times not limited to the time of the commission of the acts alleged herein, Defendant is a domestic corporation regularly doing business and engaging substantial and not isolated activities within the State of Oregon. Fed.R.Civ.P. 4(h). Moreover, the legal requirement for specific personal jurisdiction is satisfied where Plaintiff's claim arises out of Defendant's forum-related advertising, promotion, and contracting. Defendant can make no compelling case to rebut presumption of being reasonable in having the exercise of specific personal jurisdiction reside in Plaintiff's forum.

//

//

Page 3 - COMPLAINT

8.

While engaged in acts and practices described herein, Defendant made use of the mails, means,and instruments of communication in interstate commerce (18 U.S.C. Sections 1341 and 1343).

9.

Defendant engaged in schemes or artifices to defraud including a scheme or artifice to Deprive Plaintiff of the intangible right of honest services (18 U. S. C. Section 1346) but upon which Plaintiff otherwise relied.

10.

Defendant attempted and conspired to engage in prohibited activities under Title 18 U. S. C. Chapter 63, Section 1349.

11.

Under color of official right, Defendant threatened, conspired, and did cause financial harm, without lawful right, to Plaintiff and induced threat and fear of economic loss. (18 U. S. C.  Section 1951(a),(b)(2)).

12.

Defendant has engaged acts, practices and a course of conduct constituting both common law fraud *and* civil racketeering (RICO) (18 U. S C. Section 1964(c)).

13.

Defendant's activities are subject to being enjoined as provided for in 18 U. S. C. Section 1345(b).

14.

Venue is based on 28 U. S. C. Sec. 1391 and 18 U. S. C. 1965(a).  Oregon is the

state in which a substantial part of the events or omissions occurred and giving rise to

Plaintiff's claim.

15.

Pursuant to Federal Rule of Civil Procedure 4(h) [FRCP 4(h)], United States laws

provide for giving a United States court of Plaintiff's choice the jurisdiction over a corporate

Defendant who has had some contact with the jurisdiction in which a petition is filed ("forum")

by a Plaintiff who alleges having been damaged.  In this matter, the forum of the Plaintiff,

Edgar T. Numrich, is the entity in which he resides:  the State of Oregon ~ and which is served

by the United States District Court for the District of Oregon.  Defendant routinely offers

its products and services in Plaintiff's forum – whether in-person offices or by means of

the Internet and personal agents.  Defendant's corporate offices are deemed to be domiciled

within the jurisdiction of the United States District Courts in South Dakota or Delaware.

As one example, the non-resident Defendant purposely directed its activities and consummated

a transaction with the Plaintiff's forum by means of the Internet and in-person at its co-branded

credit-card AAMCO franchise located in Tigard, Oregon. In so doing, Defendant purposefully

availed itself of the privilege of conducting activities in Plaintiff's forum ~ thus invoking the

benefits and protection to Plaintiff of that forum's laws, rules, and procedures.  Plaintiff's claim

properly is one which arises out of, the Defendant's related activities in Plaintiff's forum. (1)

---

(1) "AAMCO" is an American transmission-repair franchise of American Driveline Systems, Inc.,
incorporated in 1957 and headquartered in Horsham, Pennsylvania.

16.

The legal requirement for specific personal jurisdiction is satisfied where Plaintiff's claim

arises out of the non-resident Defendant's forum-related advertising, promotion, sales, and

contracting to him in Oregon.  Including where its credit card customers routinely are solicited

worldwide by it, Defendant can make no compelling case to rebut the presumption of being

reasonable having the exercise of specific personal jurisdiction reside in Plaintiff's forum.

17.

In determining reasonableness:  (A)  Defendant's interjection of doing business in

Plaintiff's forum was purposeful;  (B)  Defendant's legal-cost burden to defend this suit in

Plaintiff's forum reasonably is no more than in the states of South Dakota or Delaware without

conflict with the sovereignty of Defendant's state.  Moreover, the State of Oregon has continuing

interest in protecting its citizens' commercial

18.

The legal requirement for specific personal jurisdiction is satisfied where Plaintiff's claim

arises out of the nonresident Defendant's forum-related advertising, promotion, sales, and

contracting to him in Oregon.  Including where its customers routinely are solicited worldwide by

it, Defendant can make no compelling case to rebut presumption of being reasonable having the

exercise of specific personal jurisdiction reside in Plaintiff's forum.

//

//

//

//

//

Page 6 - COMPLAINT

### General Allegation – Breach of Contract

*(Implied Covenant of Good Faith and Fair Dealing)*

19.

A.    Defendant entered into a contract with Plaintiff to provide him with its credit card services.

B.    In Oregon, every contract contains an implied obligation and duty that the parties will perform the contract in good faith and prohibits engaging any act avoiding fair dealing that would undermine the justified expectations of Plaintiff. Failure to engage good faith and fair dealing is a breach of contract.

C.    A breach of contract occurs when Defendant claims, refuses, or engages performance contrary to the language of the contract and reasonable contractual expectations of the Plaintiff.

D.    Defendant had an obligation to perform the contract in a way that effects the needs of the Plaintiff.

E.    and evasions violate the obligation of good faith in performance.

F.    Bad faith may be overt or may consist of inaction, lack of diligence, or abuse of discretion.

G.    Defendant's breach of contract contributed to a pattern of unlawful collection by Defendant's enterprise affecting both Plaintiff and unknown other persons.

H.    Plaintiff was injured and damaged by the above thereby.

//

//

//

//

//

//

Page 7 - COMPLAINT

## General Allegation - Negligence

21.

Defendant failed a duty of care where the law recognizes a relationship between Plaintiff and the Defendant who had a legal obligation to act in the manner of performance.

22.

Defendant breached a duty of care by failing to exercise reasonable care in fulfilling the duty.

23.

Defendant's breach of duty of care was the actual legal cause of the harms suffered by Plaintiff. But for Defendant's breach of the duty of care, Plaintiff would not have suffered the economic injury.

24.

Plaintiff's injury can be remedied by money damages. Defendant has ignored Plaintiff's written requests for its assurance to forestall any such further conduct by Defendant, thereby creating the necessity for this lawsuit.

25.

Because other cardholders of stand-alone or serviced-by credit cards issued by-or-through Defendant  Synchrony Bank may be subject to, and incur, the same or similar injury burdening Plaintiff ~ and that there is no assurance similar wrongdoing by Defendant will not occur serially ~ punitive damages are called for. Whereby for such deliberate and self-serving administration, Plaintiff is threatened by similar conduct from Defendant on any of multiple credit charge card accounts he holds and Defendant services.

//

//

## **General Allegation – Negligent Misrepresentation**

26.

Defendant has serially abrogated its responsibility to protect Plaintiff's credit *in which Defendant has a pecuniary interest*  by Defendant and/or Defendant's authorized agents or vendors (e. g. AAMCO)

(a)  *initiating* requests *unknown to Plaintiff* using Plaintiff's data for credit line increases

(b)  *creating* fraudulent requests to increase ~ and then denying making such requests ~ in Plaintiff's *existing* credit card accounts serviced and/or issued by Defendant; then

(c)  subsequently *reporting* its denials to the various credit bureaus;

(d)  *all* with adverse consequences to Plaintiff arising thereby.

27.

Indeed, at *no time* has *Plaintiff* asked for *any* credit line increases on *any* credit card issued and/or serviced by Defendant ~ whether proprietary to it (e. g., "CAR CARE ONE"), co-branded with identified vendors such as AAMCO Transmissions ("AAMCO"), or those only serviced by Defendant ("Walmart").

28.

Defendant's alleged wrongdoing is exacerbated by its *knowingly-false* insistence that for credit line increases *must* originate with the cardholder by user name and password, only then deny ~ as being "confidential" ~ the recordation of specific dates and information that would prove *or* disprove any such request was made by a cardholder to Defendant including, but not limited to, the Plaintiff in this case.

//

//

Page 9 – COMPLAINT

29.

At this writing, and within the current year, Defendant has surreptitiously and maliciously interfered with Plaintiff's existing credit accommodations by means of entering negative and fraudulent reporting to the various credit bureaus that involve at least AAMCO and Walmart Stores where

(a) Defendant services those credit card accounts issued in Plaintiff's name and

(b) *none-of-which*

are co-branded with Defendant.

30.

Specifically to the above and dated September 10, 2019, Defendant has insisted

"SYNCHRONY BANK has received your credit line increase request for your Walmart Credit Card account ending in 2552. We are unable to approve your request at this time" *and* "some information used to make this decision was obtained from [a] consumer reporting agency listed."

but where *in no instance did Plaintiff initiate any such increase request with Synchrony Bank* or otherwise authorize *any* agent to do so ~ including *either with Walmart or AAMCO*.  (1)

31.

To make matters worse, Defendant has repeatedly touted to Plaintiff ~ and will be demonstrated at trial ~  that credit line increase requests may only be made by him personally ~ **using an online system that "requires a proprietary user name and password"** ~ but which "system" Plaintiff has *never* attempted to access.

_____

(1)    Walmart has since terminated its branded credit card relationship with Synchrony Financial.

Page 10 - COMPLAINT

32.

Indeed, *Defendant has refused to provide* Plaintiff with *any* information as to the source and/or documentation of the requests for credit line increases *allegedly* from Plaintiff on his Walmart credit card that were reported (a) as being made at all; (b) and/or by whom; but (c) denied to Plaintiff by mail dated September 13, 2019; (d) and where any such documentation is termed by Defendant's "Corporate Specialist, Consumer Relations", Jessica Zamora, as being "confidential" and "proprietary" ~ but *unreasonably, prejudicially*, and *wrongfully withheld* from Plaintiff as the negatively-affected party.

33.

In seeking this Court's remedy, Plaintiff avers such conduct by Defendant must not be Allowed to stand.

34.

Plaintiff's attempts to engage and reckon Defendant's "Office of the President" in these matters likewise have proven fruitless ~ including, but not limited to, near the outset of the issues documented herein by means of direct written communications addressed by Plaintiff to the Chief Executive Officer of Synchchrony Financial, Margaret M. Keane, who has made no direct reply to Plaintiff at any time while the staff to whom Ms. Keane directed matters has taken no constructive action.

35.

Plaintiff avers that to date ~ except for specious credit line increase requests by unknown sources ~ he is aware of **no** evidence or other indication that his card accounts issued or serviced by Synchrony have been breached or otherwise subject to unauthorized use in any transaction market at any at any time.

36.

It bears repeating, in the actual examples that follow herein, Plaintiff *at no time* made *any* request to Synchrony Bank for credit line increase(s).  At no time has Plaintiff sought to acquire a co-branded  Synchrony Bank credit card with AAMCO.  At all relative times, Plaintiff had and has a *generic* Synchrony Bank credit card.   On his own initiative at the time, Plaintiff used that card to partially pay for repair services by AAMCO  in a timely manner; any balance due AAMCO was paid by Plaintiff at the same time from other sources.  Plaintiff has ~ and never has had ~ an outstanding balance with AAMCO for services provided.

37.

Contrary to *multiple* representations otherwise made to Plaintiff by Synchrony personnel, Plaintiff does have sufficient specific reason to believe Synchrony's "automated system" *and/or* "live" representatives *may* review, consider, and grant (*or* deny) credit line increase requests made to it from certain vendors *without Synchrony having the cardholder's user name and password* ~ and whether or not the Synchrony credit card is co-branded with a Synchrony-authorized vendors ~ viz. specifically here:  AAMCO Transmissions – which Plaintiff does *not* hold --  and Walmart (whose credit card is  no longer serviced by Synchrony).

38.

In the examples set forth herein, Synchrony ~ of its own doing ~ has made *and documented to Plaintiff* its reports to the various credit bureaus for credit conduct ~ including, but not limited "requests" for credit line increases made to Synchrony *for which Plaintiff had no knowledge, made no request*, and *was never advised by Synchrony that it was engaging such conduct* -- whether or not with Plaintiff's knowledge or agreement that it was doing so.  At a minimum, Plaintiff avers such conduct by Synchrony evidences *endemic violation* of the covenants of Good Faith and Fair Dealing in the contract its cardholder-customer(s).

39.

Herewith, an edited-for-relevance-and-clarity copy of an "online Chat" with Defendant of May 1, 2019, which ~ just of itself ~ frames elements of Plaintiff's ("ETN") Complaint:

"Welcome to MySynchrony.com Chat. Your chat may be monitored and recorded for quality purposes. A chat agent will be with you momentarily.

**Chat reference number: 13134500**

SYNC:  Hi, Good Evening. My name is Saul Godwin. I am a live chat agent. Post your interaction with our virtual assistant Sydney, you are now connected to me and I will be happy to help you.How may I assist you?  I see you are typing, would be glad to wait for your response.

ETN:  My name is Edgar Numrich. The last four digits of my Synchrony Car Care One card are ****. The last four digits of my Social Security number are ****.  I'm following up on my unfulfilled request to receive the full details of an alleged request for a credit line increase that was allegedly made by AAMCO Transmissions in Tigard Oregon on or before April 12, 2018.  The request was turned down and at least a pro-forma letter was sent to me. That letter was my first knowledge that a request had been made. Any such request was without my knowledge or permission.  In my earlier online communication through this link (now about two weeks ago), I requested and was assured of receiving the details from Synchrony on who and when and for what amount a credit line increase was initiated.  Your online representative said I should receive same in a reasonable time frame. I have seen nothing to date.

\*\*\*

ETN:  This is very important to me because, as you well know, both a credit increase request and a denial of same by the merchant shows up as a negative entry on my credit bureau reports and is damaging to my credit worthiness  I have not received any information on this aspect of the matter to date.  And I don't wish to have this "hanging out there" including that I believe it is in violation of contract law.

ETN:  Specifically the element that says (at least in Oregon where I live) every contract is subject to a covenant of good faith and fair dealing.

SYNC:  Thank you for providing these information in details.  First of all, I apologize for the inconvenience this may have caused.

**ETN:  I believe that covenant was violated by the merchant.**

**SYNC:  I also believe the same like you.  It is not only an important issue for you but also a very important issue for us.  (emphasis supplied)**

ETN:  All I need now is for Synchrony to furnish me with written confirmation of what occurred between it and the merchant relative to this matter."

SYNC:  I am very sorry to know that you didn't receive any information till now. Now, coming to the solution part.

ETN:  Thank you.

**SYNC:   While you were providing these (sic) information, I have reviewed your account and found the below information:   On the date of 04/08/19, time: 16:00:22 (Eastern Time), applied for credit limit increase from $1500 to $2000. It was approved.**

ETN:  That doesn't square with the letter I received from Synchrony.

**SYNC:  I found another credit limit increase request has been initiated on the same date, time: 16:00:23.  It was practically approved to $2500.  Then, on the same date, time: 16:05:59.  Applied for another credit limit increase and it was denied.**

ETN:  I had NO knowledge of ANY of these requests.  Let alone by whom because it was not me.

SYNC:  Now, I only need one confirm from you that you didn't attempt those (though I know you didn't do that, however, need this written confirmation).

ETN:  Thank you for the information, you answered my query. And up to now, I have never received any specific reference to any credit line increase.

SYNC:   After understanding your issue, I have communicated with the fraud team immediately.

ETN:  And,  up to now, I have never received any specific reference to any credit line increase.

SYNC:  They confirm, they'll take care this issue and requested to call at 1-877-878-4115.  Now, coming to the credit bureau issue.

ETN: "They" who?

SYNC: I mean the Universal Fraud team

SYNC: They confirm, they'll take care this issue and requested (sic) to call at 1-877-878-4115.

ETN: OK but . . .

SYNC: The Universal Fraud team will take care this issue and requested (sic) to call at 1-877-878-4115. I'll answer your all question, please allow me some time. I see you are typing, would be glad to wait for your response.

ETN: Please be reminded that, to date, the ONLY written communication received from Synchrony was a "form letter" denial of increase that did NOT contain any numbers

SYNC: Thank you for the reminder. I know and understand that issue. That's the reason, I am going to report this issue to the credit bureau and raising a complaint.

ETN: Will you be copying that to me by regular mail?

SYNC: They'll rectify this issue within 30 days (that's the mandatory time frame) after contacting the Fraud team. I apologize, I cannot copy that to you due to security reason, however, if you want, you can directly contact them, I can provide their number and get information from them.

39.

For all of the immediately above: *Plaintiff has never heard further from anyone at Synchrony in any form, or any level of management in any way* ~ with possible exception of feigning ignorance thereof to Plaintiff ~ *and certainly not any "universal fraud team"*.

40.

Given all of the above herein *and subsequent to the draft details herein above*, on or about November 26, 2019 ("the November 2019 inquiry") Plaintiff had occasion to visit the AAMCO franchised service center in Tigard, Oregon, in conjunction with routine transmission

Page 15 - COMPLAINT

service as encouraged by a notice Plaintiff received from AAMCO by mail. On the occasion of the visit, Plaintiff met with the store manager who originally had supervised the transmission overhaul of Plaintiff's car *and at that time  collected full payment from Plaintiff for the work.*

41.

In the course of the November 2019 inquiry, Plaintiff inquired of the store manager regarding their credit procedures and particularly in conjunction with credit accommodation by Synchrony Bank. More specifically ~ and for the first time as well ~ Plaintiff inquired if an AAMCO franchise ~ and the Tigard store ~ (1) had authority from Synchrony ~ *on the store's initiative only* ~ to request a credit line increase to a Synchrony Bank card that was **not** co-branded with AAMCO; (2) did the Tigard AAMCO store do so with Plaintiff's Synchrony Bank card; and (3) what were the results of that inquiry at the time.

42.

The AAMCO store manager answered ***affirmatively*** to (1) and (2) above and advised Plaintiff of certain increases in Plaintiff's credit line being authorized and one  for increase being denied to him by Synchrony's credit system. All of which came as a total surprise at the time to Plaintiff given Defendant's previous statements to the contrary made to Plaintiff (and as a matter of record in Discovery here).

43.

For all of the above, Defendant failed a duty of care where the law recognizes a relationship between Plaintiff and the Defendant who had a legal obligation to act in the manner of performance.

Page 16 - COMPLAINT

44.

Including as otherwise set forth herein, Defendant has serially claimed and represented to Plaintiff that credit line increase requests *require* a cardholder's user name and password using Defendant's "automated system".

45.

In fact ~ and as physically demonstrated to Plaintiff by the AAMCO store manager ~ Defendant routinely supplies software to its suppliers (such as AAMCO) that require *only* the **credit card number** issued by Synchrony Bank; i. e., no customer name; no user name; no password for purposes of requesting a credit line increase on the card as well as *without the knowledge – let alone approval -- of the cardholder.*

46.

**Summarily therefore to this General Allegation:**

Defendant made knowingly false representations in transactions in which it had a pecuniary interest.

Defendant supplied false, erroneous, or *no* information for Plaintiff's guidance.

Defendant did not exercise reasonable care or competence in obtaining or communicating the representations.

Plaintiff suffered both pecuniary and non-economic loss by justifiably relying on the representations.

Defendant's negligent misrepresentation contributed to a pattern of negligent activity by Defendant's enterprise.

Plaintiff was injured and damaged thereby.

## General Allegation – Negligent Infliction of Emotional Distress

47.

At all relevant times a relationship existed between Defendant and Plaintiff creating a heightened duty to Plaintiff on the part of Defendant.

In the relationship, Defendant is liable in negligence for both economic and non-economic harm predicated on the heightened duty of Defendant to Plaintiff beyond the common-law duty to exercise reasonable care to prevent foreseeable harm. Defendant's failures in (1) *routine* unilateral self-promoting-then-refusing credit line increases (2) never requested by cardholders (3) then generating negative reports to credit bureaus consequent (4) constitute individually and collectively egregious abuse of Defendant's higher duties. Damage to Plaintiff's credit reports caused solely at the hand of Defendant's selfish initiatives were actual and presented harm to Plaintiff causing him emotional distress including, but not limited to, both economic and non-economic loss affecting Plaintiff's sense of well-being within valued customer relationships over several decades that universally set a duty of Defendant to Plaintiff ~ and others so situate ~ beyond the duty to exercise reasonable care to prevent foreseeable

harm. The harm need not be physical in nature. Plaintiff was injured and damaged thereby.

//

//

//

//

//

//

//

18 – COMPLAINT

## General Allegation – Fraud

48.

At all relevant times, Defendant has made multiple false representations to Plaintiff in the course of -routine dealings.

49.

The representations were and are material including, but not limited to, where Defendant had knowledge of the falsity of the representations.

50.

Defendant intended and contemplated that Plaintiff rely and act on Defendant's Representations in a reasonable manner.

51.

Plaintiff was ignorant of the falsity of Defendant's representations including, but not limited to,the extent and degree of the falsity *beyond* Defendant's use of the mails and wires that contributed to fraudulent activity by Defendant's credit card enterprise.

52.

Plaintiff relied on the truth of certain representations of Defendant and had a right to rely thereon. Each and all of the above circumstances and the detail with are – and caused – the consequent and proximate3 injury and damage to Plaintiff. Defendant's actions and conduct were knowing and deliberate.

//

//

//

//

## General Allegation - RICO

53.

At all relevant times and as defined in 18 U. S. C. Section 1961(3), Defendant was an entity capable of a legal or beneficial interest in property.

54.

At all relevant times, Defendant – including as a corporation or association – engaged, combined, and participated in one or more association-in-fact enterprises that included other persons or entities.  18 U. S. C.  Section 1961(4)

55.

At all relevant times, Defendant engaged in a pattern of racketeering activity as credit card issuer  and/or servicer in providing credit lines whether in the name of its holding company (e. g., Synchrony Financial, Car Care One); nominally as a bank (e. g., Synchrony Bank, Walmart); or co-branded with any of various Vendors (e. g., AAMCO; Discount Tire) consequent to more than two predicate acts of mail and wire fraud – *as distinguished in settled law from the elements of common law fraud* – including, but not limited to, as represented and directed to Plaintiff – and as otherwise set forth within the definitions and limits prescribed *inter alia* in 18 U. S. C. Sections 1341, 1343, 1346, 1961 (1),(5).

56.

At all relevant times, Defendant, including ~ but not limited to ~ by its use of the Internet, electronically mailed, or directed and caused to be electronically mailed by others, documents that were at least incidental to an essential part of one enterprise scheme constituting sufficiency to state the use of the wires and mails elements of mail fraud as predicated acts under the Racketeer Influenced and Corrupt Organizations (RICO) Act.  18 U. S. C. Sections 1341, 1962(c).

Page 20 - COMPLAINT

57.

At all relevant times and as separate elements, Defendant's association-in-fact RICO Enterprise had a structure with at least (1) a purpose, (2) relationships among the associates, and (3) longevity sufficient to permit the associates to pursue the enterprise's purpose. The enterprise's existence may be readily proven by what it did rather than an abstract analysis of its structure.  18 U. S. C. Section 1962(c).

58.

At all relevant times, Defendant's enterprise was an ongoing organization with a framework ~ whether formal or informal ~ for carrying out its objectives including, but not limited to, a pattern of racketeering activity and unlawful use of funds for its own purposes as derived therefrom.  18 U. S. C. Sections 1962(c),(d).

59.

At all relevant times, the various members and associates of the association (including, but not limited to "in-house" as well as outside agents/agencies) functioned as a continuing unit to achieve a common purpose, not necessarily with a structural hierarchy, formed for the purpose of carrying out a pattern of racketeering activity done at the bidding and participation of Defendant; all in a coordinated manner and regular way of doing business in order to carry out the alleged common purpose of the enterprise.

60.

Including as with Defendant here, it is unlawful for any "person" or "entity" associated with any enterprise engaged in, or the activities of which affect, interstate commerce, to conduct or participate ~ directly or indirectly ~ in the conduct of such enterprise's affairs through a pattern of racketeering activity.  18 U. S. C.  Section 1962(c).

Page 21 – COMPLAINT

61.

Including as with Defendant here, it is unlawful for any "person" or "entity" to invest funds derived from a pattern of racketeering activity that from Plaintiff's information and belief affect interstate commerce.  18 U. S. C.  Section 1962(a).

62.

At all relevant times, there was a nexus between the enterprise and the association in Carrying out the predicate acts constituent to the racketeering activity.

63.

At all relevant times, there was a nexus between the racketeering activity of Defendant's Enterprise and interstate commerce.

64.

Each and all of Defendant's and the associations' predicate acts were the proximate cause of injury and damage to Plaintiff.

## **Damages**

65.

Consequent to the actions of Defendant, Plaintiff suffered both economic and non-economic damages and loss.   Plaintiff's economic damages may be established with reasonable probability and are capable of confirmation by reference to empirical facts. These include, but are not limited to, Defendant's breach of the implied covenant of good faith and fair dealing in the contract between the parties together with negligent acts in making no known effort to remedy what should have been routine.  As a consequence, Plaintiff literally and factually wasted his time, money, and emotion in effecting and attempting

Page 22 - COMPLAINT

protection of his credit worthiness and card accounts consequent to unforeseen and wrongful manipulation and lack of proper servicing that resulted in both economic and non-economic damage to him at the hand of Defendant. Defendant has made no effort in favor of Plaintiff to correct its wrongdoing. Plaintiff's non-economic damages include pain and mental suffering, emotional distress, inconvenience, and interference with his normal and usual activities.

66.

Plaintiff specifically pleads money damages in the amount of $225,000.00 from Defendant for its breach of contract/implied covenant of good faith and fair dealing:

(1) by purposely creating false inquiries for credit line increases in Plaintiff's credit card amounts; then to turn them down;

(2) negligence by Defendant's enterprise in its internal administration of Plaintiff's credit card accounts whether proprietary to Defendant or merely serviced by it; together with

(3) negligent misrepresentation of Defendant's credit card accounts to the credit bureaus;

(4) negligent infliction of emotional distress to Plaintiff in failing to perform offered terms of Defendant's proprietary credit card accounts;

(5) negligent infliction of emotional distress to Plaintiff in failing to perform terms of Plaintiff's credit card accounts that are only serviced by Defendant;

(6) malicious use of the mails and wires directed to Plaintiff in furtherance of Defendant's lawfully improper conduct in both falsification of inquiries into Plaintiff's credit card accounts;

(7) failure to observe and entertain Plaintiff's protected interests were of a sufficient importance and distinct duty apart from normal foresee ability;

(8) ignoring Plaintiff's legally protected interests were of a sufficient importance and distinct source of legal duty apart from normal foresee ability.

In total, Plaintiff alleges economic damages of $75,000.00 and non-economic damages of $150,000.00 against Defendant Synchrony Bank.

## Claim

### 67.

Plaintiff restates and incorporates by reference the allegations contained herein in paragraph 1 to 67.

### 68.

As a direct consequence of Defendant's

 (a)  breach of contract;

 (b)  negligence;

 (c)  negligent misrepresentation;

 (d)  negligent infliction of emotional distress;

 (e)  both common-law fraud, together with mail and wire fraud:

Plaintiff suffered grievous consequences, injury, and damage to his personal welfare and economic well-being.

### 69.

At no time has Defendant made any effort to verify or otherwise substantiate that its actions herein as being legitimate to satisfy its credit card contracts with Plaintiff. Defendant breached its contract, was negligent, engaged in acts of negligent misrepresentation and negligent infliction of emotional distress against and toward Plaintiff – including, but not limited to, within its duplicitous racketeer-influenced corrupt organization – each and all for its own unjust enrichment ~ and which injured and damaged Plaintiff.

Page 24 – COMPLAINT

70.

Plaintiff is entitled to relief and monetary damages for his injuries.

71.

A real and actual controversy exists between the parties. The controversy is judiciable in this Court. Plaintiff has no adequate remedy at law other than this action.

72.

Plaintiff suffered irreparable harm, mental distress, pain, and suffering as a result of the actions and conduct of Defendant complained of herein.

WHEREFORE, Plaintiff prays for judgment, together with declaratory relief as may be appropriate, in favor of him together with award of general and punitive damages:

(1) Economic damages in the amount of $75,000.00 as against Defendant Synchrony Bank;

(2) Non-economic damages in the amount of $150,000.00 as against Defendant Synchrony Bank;

(3) The cost of this action and Plaintiff's reasonable attorneys' fees, if any, together with interest until paid; and

(4) That this Court retain jurisdiction of this action and Plaintiff have such other and further relief as is just.

(5) This Complaint is not subject to mandatory arbitration. Plaintiff demands a trial by jury.

DATED:    December 19, 2019

Respectfully submitted,

EDGAR T. NUMRICH
Plaintiff, *pro se*

Page 25 - COMPLAINT